IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK LEE TOWNSEND,<br><br>  Petitioner,<br><br>vs.<br><br>M.D. McDONALD<br><br>  Respondent. | Case No. 2:08-cv-2780 (JKS)<br><br>MEMORANDUM DECISION |

Petitioner, Jack Lee Townsend, a state prisoner proceeding *pro se*, has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254.  Townsend is currently in the custody of the California Department of Corrections, incarcerated at the High Desert State Prison in Susanville, California.  Respondent has filed an Answer and Townsend has filed a Traverse.

STATEMENT OF THE FACTS

  Defendant was a 67-year-old alcoholic manual laborer who lived in a poor section of "old" Roseville. For two and a half months in 2004 he rented a room from Mary Ellen Smith, known in the area as "Scary Ellen."
  Two weeks before he shot and killed Smith, defendant told his best friend George Bayles, and Bayles's girlfriend Theresa Schuster, that he went into Smith's room with a shotgun, intending to "blow her head off" while she was in bed, but changed his mind. He offered Schuster $50 to hurt Smith, to "kick her ass." For two weeks he "periodically" talked about hurting Smith. The only specific complaints he mentioned were a dispute about recyclable cans belonging to him which Smith had cashed in, and Smith's carping about his general messiness, in particular his failure to clean up toaster crumbs.
  On September 7, 2004, defendant told Bayles he was "fed up" and wanted to kill Smith. He was worried about having to live in his van. Bayles, who lived on the same block as defendant, offered to let defendant room with him and said there was a vacancy; defendant replied: "'Well, I wanted to at least hit the bitch [.]'" He said he could commit a crime to get "three hots and a cot," meaning room and board in a penitentiary. Both Bayles and Schuster testified defendant was not drunk, although he had had some beer.
  Defendant had left Bayles's place at around 7 p.m. and returned about an hour and a half later, telling Bayles and Schuster something like: "I just got Mary Ellen. I shot that bitch four times." After some discussion Bayles and Schuster left to call 911. Defendant was on "his phone calmly talking to his girlfriend Dee." Schuster testified defendant was not drunk.
  Roseville Police Department officers found Smith, aged 47, in her bed, under a blanket with four holes in it, with four close-range wounds to the chest-any of which could have been fatal-and no defensive wounds; the television was turned on to The

X-Files. They found a shotgun in defendant's room with a live shell in it, four expended shells (three in the victim's bedroom and one in the kitchen), and an open shell box with five missing. A partially empty 24-ounce beer can was found on the porch rail.

While in a patrol car defendant said "The bitch is dead," "I'm in deep shit. Oh well," and "I did what I wanted to do." He was calm, and although he smelled of alcohol he did not seem drunk. At jail he told an officer "I shot the bitch. She deserved it." He said he had a beer after he shot Smith.

During a recorded interrogation defendant said Smith "Pissed me off," but when asked "How long has it been building up for," he replied "Tonight." He knew Smith was called Scary Ellen but he rented a room from her because she did not bother him. He described her as a "Ding-a-ling."

Defendant told the officers that he shot Smith in her bed four times and then walked to a market to buy some beer. He said that she was dead after the first shot-though he later said he did not know-but "Don't ask me why I fired four shots. Don't ask me because I do not know." "I fired that first shot and I said, Jack, you've done it. I said, fuck it .... I fired three more." "I don't want somebody [to] say well it was premeditated. Well, I was just pissed, man. I was thinking about it. How do you know.... I mean look, how you gonna ... how you gonna accommodate that thought that I'm gonna kill that bitch? Okay? How you gonna accommodate that thought and-and really do it?" Later he said, "The bitch is ... the wicked witch is dead! Okay? I can't answer these questions because I don't know."

Bayles testified that he never saw Smith's poor conduct, but had heard from defendant that she was unstable and would be friendly and then abruptly nasty, such as telling defendant to "get the fuck out of the house[.]" Defendant told Bayles that Smith's constant behavior wore him down and he could not put up with it any longer. Schuster confirmed that defendant was upset because of a dispute about recyclable cans which Smith claimed were hers, and Smith's complaints about the toaster.

Kevin Hubert had been Smith's boyfriend in the recent past and had lived with her for nearly four years. He testified she had mood swings and erupted into violent tirades; she was verbally abusive and demeaning, and accused Hubert of being dirty and a slob around the house.

Defendant's girlfriend testified he told her Smith could be happy and then down, was impatient, and said he was dirty and a pig, which made him feel upset, belittled and angry, so he was trying to save money to move out. She spoke to him by telephone before and after he killed Smith. He first said that Smith had told him he would have to move out, even though his rent was paid through the end of the month, and he could commit a crime to get room and board and should shoot Smith in the "butt." In the last call he said he shot Smith because she ran him down and he could not stand it.

Bayles testified defendant talked to himself and might be getting senile; defendant's girlfriend had heard him talking to himself and repeating himself.

A blood sample taken from defendant at about 12:30 a.m. at the jail showed a blood alcohol level of .11; an expert opined his level would have been around .16 or .17 at around 9:15 p.m., assuming he had only one beer after that time. The expert testified that heavy drinkers have a greater tolerance for alcohol than others.

Dr. John Wicks, a neuropsychologist, tested defendant and concluded that although he had an average I.Q., he had impaired "executive" functioning, such as impulse control problems, due to brain damage caused by chronic alcoholism.

Dr. Albert Globus, a psychiatrist, testified defendant was a depressed alcoholic, and his brain scan showed "mild atrophy" consistent with "very mild early dementia." Alcohol tolerance may affect the degree of impairment of motor skills while drinking, but

not the degree of impairment of thought. Defendant would be more sensitive than other people to a confrontation and less able to block or control an inappropriate response.[1]

## PROCEDURAL HISTORY

On January 18, 2006, a jury convicted Townsend of one count of violation of California Penal Code section 187(a) (first-degree murder) with a firearm discharge enhancement. Townsend was sentenced to a prison term of 50 years to life.

Townsend timely appealed his conviction to the California Court of Appeal, Third Appellate District, who affirmed his conviction and sentence in a reasoned opinion.

The California Supreme Court denied Townsend's petition to review the decision of the Court of Appeal.

On January 28, 2009, Townsend timely filed a petition for habeas corpus relief in this court. Although the grounds for relief are not clearly presented, it appears Townsend has raised three grounds for relief:

1. Townsend was entitled to an instruction on provocation as it relates to manslaughter.
2. Townsend's trial counsel was ineffective for failing to present a diminished capacity defense to support the provocation instruction request.
3. Townsend's appellate counsel was ineffective for failing to raise the first ground in Townsend's direct appeal.

Respondent does not raise a procedural bar, but asserts that Townsend's second and third grounds have not been properly exhausted.

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its

---

[1] The excerpted facts are taken from the decision of the California Court of Appeals. Lodged Doc. B, pp. 2-8.

decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[2] The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[3] The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[4] Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[5] When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[6] The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[7] "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a

---

[2] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[3] *Williams*, 529 U.S. at 412.

[4] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[5] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[6] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[7] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

denial of due process.'"[8]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[9]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[10]

In applying this standard, this Court reviews the last reasoned decision by the state court.[11]  Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[12]  This presumption applies to state trial courts and appellate courts alike.[13]

When there is no reasoned state court decision denying an issue presented to the state court and raised in a federal habeas petition, this Court must assume that the state court decided all the issues presented to it and perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.[14]  The scope of this review is for clear error of the state court ruling on the petition:

---

[8] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[9] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[10] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[11] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[12] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[13] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

[14] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).

> [A]lthough we cannot undertake our review by analyzing the basis for the state court's decision, we can view it through the "objectively reasonable" lens ground by *Williams* . . . .  Federal habeas review is not *de novo* when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law.  Only by that examination may we determine whether the state court's decision was objectively reasonable.[15]

"[A]lthough we independently review the record, we still defer to the state court's ultimate decision."[16]

## DISCUSSION

### The Trial Court Erred by Not Instructing the Jury on Provocation with Respect to Manslaughter

Townsend claims that he "was denied his Fourteenth Amendment right to Equal Protection of law[s] by the court[s] using an unreasonable determination of clearly established law."[17]  Specifically, Townsend claims the trial court was obligated to instruct the jury on provocation with respect to manslaughter.[18]

To the extent that Townsend claims that he was entitled to a lesser included offense of manslaughter instruction based on the victim's provocation, he is not entitled to relief.  While it is true that due process and the Sixth Amendment to the Constitution require that a jury be correctly instructed as to every element of the crime with which a defendant is charged and convicted,[19] that is not the issue before this Court.  The issue before this Court is whether due process requires that a jury in a criminal trial be instructed at all or correctly instructed as to a

---

[15] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (internal citation omitted); *see also Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004).

[16] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

[17] Docket No. 13, p. 7.

[18] In his direct appeal Townsend claimed that he was entitled to an instruction on manslaughter based on provocation.  Because Townsend's Petition to this Court is rather inartfully constructed, it is not clear what theory of relief he is pursuing.  This Court will interpret his argument to be the same one he raised on appeal, since any other theory of relief would be unexhausted.  *Woods v. Carey*, 525 F.3d 886 (9th Cir. 2008) (*pro se* prisoner pleadings are liberally construed).

[19] *See United States v. Gaudin*, 515 U.S. 506, 522-23 (1995).

6

lesser-included offense of manslaughter.  First, Supreme Court precedent does not require a trial court to instruct the jury on lesser-included offenses in a non-capital case,[20] and the Ninth Circuit has concluded that such a claim is not cognizable on federal habeas review.[21]  It follows, *a fortiori*, that if a failure to instruct on lesser included charges at all does not present a federal issue, a failure to instruct on them correctly also does not present a federal issue.

Additionally, this Court notes that the trial court actually did instruct the jury on the issue of provocation[22] as well as on both second degree murder[23] and manslaughter.[24]  To the extent that Townsend argues that these instructions, as written, were inadequate, that issue is beyond the purview of this Court in a federal habeas proceeding.  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[25]  A fundamental principle of our federal system is "that a state court's interpretation of state law,

---

[20] *Beck v. Alabama,* 447 U.S. 625, 638 (1980).

[21] *Solis v. Garcia,* 219 F.3d 922, 929 (9th Cir. 2000); *see also* 28 U.S.C. § 2254(d)(1); *Brewer v. Hall,* 378 F.3d 952, 955 (9th Cir. 2004) ("If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law.").

[22]  The court gave CALJIC Nos. 8.42-8.44 and 8.73.  Lodged Doc. B, pp. 24-25.

[23]  The court instructed the jury that if they had a reasonable doubt as to the degree of murder, they were to return a verdict of second degree murder.  CALJIC No. 8.71.  Lodged Doc. B, p. 25.

[24]  The court instructed the jury that the People had the burden of proving the killing was not done in the heat of passion or upon sudden quarrel.  CALJIC No. 8.50.  Lodged Doc. B, p. 25.

[25] *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Engle v. Isaac*, 456 U.S. 107, 119 (1982) (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone,* 543 U.S. 447, 455 (2005) (a federal court may not lightly presume that a state court failed to apply its own law).

including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[26]

Finally, it seems illogical that any different form of the provocation or manslaughter instructions would have affected the outcome. The jury was instructed on first degree murder, and two lesser included offenses: second degree murder and manslaughter. Nevertheless, the jury found Townsend guilty of first degree murder, the most serious of the three charges. If the jury was unwilling to find Townsend guilty of the lesser charge of second-degree murder,[27] there is no support for the assertion that they would have found him guilty of manslaughter had the instruction been any different. Townsend is not entitled to relief on his first ground.

## Ineffective Assistance of Trial Counsel

Townsend claims that his trial counsel was ineffective for failing to present evidence to support the fact that there was a need for additional jury instructions. Although it is not entirely clear from the petition, it appears that Townsend is asserting that his counsel should have presented more evidence to support the request for a provocation instruction.

Under *Strickland*, to demonstrate ineffective assistance of counsel, Petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[28] A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[29] Petitioner must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for

---

[26] *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[27] Townsend does not allege that the instruction on second degree murder was defective in any way.

[28] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[29] *Id*.

8

counsel's ineffectiveness, the result would have been different.[30]  An analysis that focuses "solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."[31]

In this case, Townsend is unable to show either that his counsel's performance was defective or that he was prejudiced.  The record clearly indicates that the jury was given instructions on both provocation and manslaughter.  Townsend does not indicate what additional instructions his counsel should have argued for or how his counsel should have asked the court to reword the instructions that were given.  Furthermore, Townsend does not indicate any exculpatory or mitigating evidence that was available to his attorney but overlooked.  Townsend is also unable to show prejudice.  As noted above, even though the jury was instructed on two different, lesser charges, it still returned a conviction of first degree murder, the most serious of the three offenses.  Townsend is not entitled to relief on his second ground.

### Ineffective Assistance of Appellate Counsel

Townsend claims that his appellate counsel was ineffective for failing to raise his first two grounds on direct appeal.  As noted above, Townsend must show that appellate counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would

---

[30] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[31] *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *see Strickland*, 466 U.S. at 687; *see also Kimmel v. Morrison*, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect"); *United States v. Cronic*, 466 U.S. 648, 258 (1984) ("the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.").

have been different.[32]  The failure of appellate counsel to raise meritless or weak issues does not constitute ineffective assistance of counsel.[33]

Both of Townsend's first two grounds are without merit.  Thus, Townsend's appellate counsel was not ineffective for failing to raise them.  Furthermore, the record indicates that Townsend's appellate counsel did, in fact, assert a challenge to the sufficiency of the manslaughter instruction.  Townsend is not entitled to relief on his third ground.

## CONCLUSION AND ORDER

Townsend is not entitled to relief under any ground raised in the Petition.  Accordingly,

**IT IS HEREBY ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[34]

The Clerk of the Court is to enter judgment accordingly.

Dated: November 9, 2010

                                                           /s/ James K. Singleton, Jr.

                                                 **JAMES K. SINGLETON, JR.**
                                                    United States District Judge

---

[32] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[33] *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (holding that it is not ineffective counsel to fail to raise meritless claims).

[34] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.